# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
# BALTIMORE DIVISION

| | |
|---|---|
| U.S. Equal Employment Opportunity Commission,<br>    George H. Fallon Federal Building<br>    31 Hopkins Plaza, Suite 1432<br>    Baltimore, MD 21201,<br><br>                **Plaintiff,**<br><br>              v.<br><br>Greyhound Lines, Inc.,<br>    2110 Haines Street<br>    Baltimore, MD 21230<br><br>                **Defendant.** | Civil Action No.<br><br><br><br><br>COMPLAINT<br><br><br>JURY TRIAL DEMAND |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, as amended, and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices and to provide appropriate relief to Aliya Hadith ("Hadith"), who was adversely affected by such practices. As alleged with greater particularity below, the United States Equal Employment Opportunity Commission ("EEOC" or "the Commission") alleges that Greyhound Lines, Inc. ("Defendant") unlawfully discriminated against Hadith by denying her a religious accommodation and constructively discharging her because of her religion (Islam) in violation of Title VII.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337,

1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(l) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(l) and (3) ("Title VII"), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Maryland.

## PARTIES

3. Plaintiff, the United States Equal Employment Opportunity Commission, is the Agency of the United States of America charged with the administration, interpretation and enforcement of Title VII, and is expressly authorized to bring this action by Section 706(f)(l) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(l) and (3).

4. At all relevant times, Defendant has continuously been a Texas Corporation with at least fifteen (15) employees doing business within Maryland.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Subsections 701(b), (g) and (h) of Title VII, 42 U.S.C. § 2000e(b), (g), and (h).

6. More than 30 days prior to the institution of this lawsuit, Hadith filed a charge with the Commission alleging violations of Title VII by Defendant.

7. On February 4, 2019, the Commission issued Defendant a Letter of Determination finding reasonable cause to believe that Defendant violated Title VII and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the discriminatory practices and provide appropriate relief.

8. The Commission engaged in communications with Defendant to provide Defendant the opportunity to remedy the discriminatory practices described in the Letter of Determination.

9. The Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

10. On February 27, 2019, the Commission issued a Notice of Failure of Conciliation to Defendant.

11. All conditions precedent to the initiation of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

12. Since at least November 2017, Defendant has engaged in unlawful employment practices in violation of Sections 701(j) and 703(a), of Title VII, 42 U.S.C. §§ 2000e(j), 2000e-2(a) by denying Hadith a religious accommodation and constructively discharging her because of her religion (Islam).

    a. Defendant is an intercity common carrier and one of the largest bus service companies in the United States. Hadith is a practicing Muslim who observes her faith, in part, by dressing modestly in accordance with her understanding of several passages of the Quran. Hadith adheres to this understanding of pious modesty by wearing a headscarf and an abaya, a loose-fitting ankle-length overgarment that conceals the outline of the wearer's body.

    b. In November 2017, Hadith applied to work for Defendant as a bus driver. She interviewed for the position with Supervisor, Driver Operations and Safety, Jehu Remy. Hadith wore her headscarf and abaya. Hadith explained her religious practice and asked if her garments would pose a problem in her role as a bus driver. Remy told her that her garments would not be a problem. Defendant offered Hadith a job and she accepted.

c. After Hadith accepted Defendant's offer of employment, Defendant required her to participate in a three-part training program spanning several months. One training component advised that Defendant's uniform requirements included pants.

d. The uniform requirement of wearing pants conflicted with Hadith's religious practice of dressing modestly to conceal the shape of her body in an abaya.

e. Hadith again contacted Remy and advised that the uniform requirement appeared to conflict with her religious practice. Hadith sought assurance that her need for her headscarf and abaya would be accommodated.

f. Remy assured Hadith that her religious practice would not be a problem, so long as she submitted a written religious accommodation request form, which he said he would provide.

g. As Hadith successfully proceeded through the training components, she continued wearing her headscarf and abaya. Around December 3, 2017, Remy advised Hadith that he had contacted his supervisors to confirm that her accommodations would be in place.

h. On December 4, 2017, Remy told Hadith he would be bringing to her the religious accommodation request form.

i. On December 5, 2017, Remy met with Hadith and advised that Defendant required her to wear a knee-length skirt with the uniform pants (long black trousers) underneath and claimed that her abaya would be an impermissible safety hazard, due to the possibility that she might trip on it.

j. Remy required Hadith to choose between the skirt-and-pants uniform or discontinuing her training and employment with Defendant.

      k.      Hadith informed Remy once again that the skirt-and-pants uniform proposal conflicted with her religious practice of modest dress by revealing the outline of her body.

      l.      Hadith declined the skirt-and-pants outfit.

      m.      Defendant constructively discharged Hadith by forcing her to choose between discontinuing her employment or a uniform that violated her religious practice of modest dress.

      n.      Prior to applying to work for Defendant, Hadith had successfully completed her CDL training while wearing her training school's uniform top over her abaya, including throughout four months of in-vehicle skills training.

      o.      Hadith satisfactorily completed all Maryland Motor Vehicle Administration examinations while wearing the abaya.

      p.      For approximately one year prior to working for Defendant, Hadith drove a tractor-trailer while wearing the abaya.

13.      The effect of the practices complained of above in paragraph 12 has been to deprive Hadith of equal employment opportunities and otherwise adversely affect her status as an employee because of her religion.

14.      The unlawful employment practices complained of above were intentional.

15.      The unlawful employment practices complained of above were done with malice or with reckless indifference to Hadith's federally protected rights.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in discrimination on the basis of religion;

B. Order Defendant to institute and carry out policies, practices, and programs which prevent discrimination on the basis of religion;

C. Order Defendant to implement non-discriminatory objectives, written policies and practices regarding the terms and conditions of employment, and sign and conspicuously post, for a designated period of time, a notice to all employees that sets forth the remedial action required by the Court and informs all employees that Defendant will not tolerate discrimination on the basis of religion;

D. Order Defendant to make Hadith whole by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to reinstatement, front pay in lieu of reinstatement, or positive references;

E. Order Defendant to make Hadith whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above;

F. Order Defendant to make Hadith whole by providing compensation for past and future non-pecuniary losses including emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, frustration, and humiliation, in an amount to be proven at trial;

G. Order Defendant to pay Hadith punitive damages for its callous indifference to her federally protected right to be free from discrimination;

H. Grant such further relief as the Court deems necessary and proper in the public interest; and

I.  Award the Commission its costs in this action.

The Commission requests a jury trial on all questions of fact raised by its Complaint.

Respectfully submitted,

JAMES L. LEE
Acting General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

_____
DEBRA M. LAWRENCE
Regional Attorney

_____
MARIA SALACUSE
Supervisory Trial Attorney
Federal Bar No. 15562

_____
JESS UNGER
Trial Attorney

UNITED STATES EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

Baltimore Field Office
George H. Fallon Federal Building
31 Hopkins Plaza, Suite 1432
Baltimore, MD 21201-2525
phone: 410-209-2763 | fax: 410-209-2221
jess.unger@eeoc.gov

7